We'll hear argument next in the case of Price v. Carri Scharf Trucking. Mr. Walton. Good morning. May it please the court, Mark Walton on behalf of the plaintiff's appellants, William Brokaw Price, Sharon Price, and their company Windfall Properties. This is a breach of contract case, comes to this court following a jury verdict against the plaintiffs on their breach of contract claim. Plaintiffs filed a 50B motion following the trial. District Court Judge Mim denied that motion. What we're asking the court is to enter judgment as a matter of law on the issue of liability for the breach of contract, and then remand just for a trial on the sole issue of damages. So the plaintiffs, our position is that there's no evidentiary basis for the conclusion that the defendants did not breach the contract. The issue of liability never should have been given to the jury. The reason for this, the contract at issue, as the court knows, this was a gravel, sand and gravel mining operation in McLean County. The contract at issue was effectively a lease. Keri Scharf Trucking is the defendant that was the mining operator. The Price family owned the farm property, allowed Keri Scharf Trucking to engage in mining operations on the property. The critical piece for the contract determination is that it had a defined term. And like any lease, it defined a period of time during which the defendants could make their operations and extract sand and gravel and sell sand and gravel from the property. And then at the end of the term, much like any lease, they had to yield possession back to the property owner. So the issue that arose in this case is the fact that all of the conduct that really formed the basis for the trial is conduct that occurred after the expiration of the term. There's no factual dispute, in fact there were admissions at trial from Mr. Scharf, the owner of Keri Scharf Trucking, that the contract term expired December 31 of 2010. And the contract required certain conduct, certain performance of the defendant by the end of the term, and that's what's critical. The contract required compliance with all laws and permits. The primary operative permit at issue in this case, and it was discussed extensively during the trial, is a special use permit issued by McLean County. That special use permit required reclamation of the property at the end of the mining. The contract also, in Article 14, required work that Keri Scharf's own engineer described as reclamation work. Building a bank of the way, distributing material around the site, and grading the site. That's Don Adams' testimony, and this is work that had to be done at the end of the term. So there's no dispute that that work was not performed. It wasn't done by the end of the term, December 31, 2010. It's all the way into 2016, 2017, and 2018 where the parties are working toward, with McLean County, trying to get Keri Scharf Materials to belatedly perform this work. Those settlement negotiations, which didn't affect what they were, the prices were working to try to get the mining operator to perform that work, even though it was past due. And those efforts broke down, they failed, so the lawsuit was filed. What's important, I think, for the court to understand is that the jury's verdict allows the mining operator to escape responsibility for cleaning up and reclaiming the property. And it's important to understand, this is a business. A mining operation is like any other business, okay? And reclamation costs money, okay? When you put the reclamation work off to be performed at the end of the contract period, you don't have any offsetting income to pay for those costs. I don't understand, counsel, why you think this contract is so clear that evidence is irrelevant. The very last sentence of Article 14, the one you're relying on, says reasonable plans and directions of price as to the distribution of said leftover materials shall be complied with at sharp sole expense. Correct. So we need to know what all of those things are, and you can't find them by staring at Article 14. You cannot, but you also can't ignore the limited term of the contract from Article 2. And that's where I believe the mistake by the district court is that in order to give effect to every provision in the lease or the contract, you have to give effect. There are two things that are clear in Article 14. One is, at the end of 2010, all equipment and improvements remain the property of Sharff. And the other is, Sharff has to comply with reasonable plans and decisions of price. Correct. So we need to know what those are. You can stare at Article 14 until you go blind without finding out what those directions are. But Article 14 does not, Your Honor, require price to give direction. It just says that Sharff will comply with directions given by price. It does not say, until price gives direction, the term of the contract is indeterminate. There's not a question about what the term of the contract is. The question is, what are the obligations of Sharff? And there's only one thing, there are two things in Article 14 that read on that. One is, everything still belongs to Sharff. And the other is, Sharff has to follow price's directions. You see the problem. If you think Article 14 solves everything about this case, it's fantastical. It doesn't. Well, I don't think that it's only Article 14, Your Honor. What I would point to is Article 9 that requires compliance with the permit. The permit required the reclamation work, the final reclamation work, to be completed at the time the mining operation was closed to operation. The testimony at trial clearly demonstrated that... No, no, you can't talk about testimony at trial because you are arguing that there should never have been a trial and that everything is established clearly on the face of the contract. True, but... That's what I don't understand. Well... I can see why a trial was needed. I can't see why there's nothing beyond the words written in this contract. Well, based on the factual admissions from the defendant that the mining operations ended in 2006 and that nothing happened on the site after May of 2009... Counsel, those are not words in the contract. They are extrinsic evidence which you say shouldn't exist. To prevail on this appeal, you have to persuade us that the written words of the contract are all we need to know, and I don't see how you can do that. That's what I'm saying. Okay. You've got the written contract, but you also have addenda to the contract, again, in writing that extend the term. So all we're asking is that the court give effect to the written term of the contract and give effect to the fact that the contract only allowed access to the property during the operation of the term. You look at the contract, it's two written addenda, and you get to the date of December 31 of 2010. There's nothing outside of the contract that extends that time period past 2010. Counsel, did you argue below that CST violated any continual obligation to reclaim as the project was going along? We did. We certainly argued that to the jury. But again, at the end of the day, if they did it while they went, then the final reclamation would be far less burdensome and time consuming. But really the problem is they didn't complete the final reclamation, and they certainly didn't complete it in time. So really we're asking the court to give effect to the term as extended in those contract addenda, which are joint exhibits 36 and 37, and rule that the defendants breached the lease as a matter of law and remand for a trial on damages. Unless the court has other questions, I'll yield. Certainly, Mr. Waldron. Mr. Schott. Your Honors, may it please the court. My name is Jonathan Scheib, and I represent the Cross Appellants, Cary Scharf Trucking Incorporated, or CST, Cary Scharf Materials Company, and Joseph A. Scharf. The essence of this case is that Joseph Scharf tried to maximize royalties for Bill and Barbara Price, and that was specifically due to a May 16, 2005 request from Bill Price that the stockpiles of sand that had previously been pushed into the lake as part of continuous reclamation no longer be pushed into that lake. Instead, Bill Price asked Joe Scharf to continue to try to sell that sand as much as possible to maximize the financial benefit, not only for Bill and Barbara Price, but for Joe Scharf. Because Joe Scharf agreed to follow Bill Price's 2005 directive to not push those sand stockpiles into the lake, he was forced to spend an enormous amount of time and money defending allegations of trespass, conversion, and breach of contract. Again, all because he followed the May 16, 2005 directive of Bill Price to keep that sand and sell as much as possible. In 2010, when counsel argues that December 31, 2010 should have been an automatic ripening of a breach of contract, Bill Price wrote another letter to Joe Scharf asking his opinion about what to do next, whether they should continue to sell more sand, whether Joseph Scharf should buy the pit from them, but ultimately Bill Price died and they were unable to come up with any plan moving forward for those sand stockpiles. So Joseph Scharf did what any reasonable person would do. He took the plans and directions he got from Bill Price and he continued to do right by Bill Price's request. He kept the sand stockpiles on the property and tried his best to continue to sell those sand stockpiles. That's best seen by a 2014 royalty payment to Bill's widow, Barbara, of approximately $5,700. In 2016, CST was completing reclamation work. They were attempting to complete the reclamation work and that was only one month after Brokaw Price, Bill Price's son, finally gave explicit instructions to push the sand stockpiles into the lake and complete reclamation. So when CST and Joe Scharf showed up on the property to complete reclamation, they did just that. They worked on completing reclamation. There was testimony at trial that the east end of the lake and the south end of the lake had already been reclaimed as necessary per the contract and all applicable permits. The west side of the lake where there was a drainage issue and the north side of the As the district court found, you could not complete reclamation so long as those sand stockpiles were on the property. That was part of the reclamation process is getting rid of those sand stockpiles. So when CST showed up, they were kicked off. Brokaw Price stopped the work with a cease and desist letter in 2016. Quite a bit of negotiation and talk with the county from 2016 to 2018 happened and an amended reclamation plan was put together and signed on April 30th, 2017. Unfortunately, Brokaw Price did not allow reclamation to continue at that time and not until February 14th of 2018 did he write what was a permission letter to say you can go forward with all of the work outlined in the amended reclamation plan. Now, the jury found specifically that Joe Scharf had a contractual right to be on all areas of the property where he was trying to complete the work that was stopped three separate times. First from the cease and desist letter and then two more times in 2018, both in June and then in September again. And those were uncontested facts at trial. Now, the jury found that Joe Scharf had not trespassed, that he had not engaged in conversion and had not breached the contract. All of the facts in the law support that. What is not supported by the facts of law is that there is any plain language in the contract that gives a time of performance for reclamation. That's most clearly seen because the word reclamation is not mentioned one time in the entire contract. It's only incorporated into the contract through Article IX, which is various state and local permits and orders. And that reclamation was brought in through those orders under Article IX, which does not have a time of performance. Again, the jury found that a contractual right existed. And this leads us to a very important issue that the cross appeal rests on. Whether a manifest error existing in the lower court's summary judgment findings can support denying attorney's fees solely on the basis of that manifest error. Again, the jury found by clear and convincing evidence that CST had proved that the contract and any incorporated responsibilities from the amended reclamation plan... Did the jury charge that the standard of proof was clear and convincing evidence? For that particular issue, that was brought as a defense to trespass to the jury, and that was under clear and convincing evidence. Why? Why was it clear and convincing evidence, Your Honor, versus... This is civil litigation. Yes, sir. So the standard to prove trespass, based on the jury instructions conference with counsel, myself, and the judge, it was determined that as these were presented as affirmative defenses, clear and convincing evidence was the appropriate standard. So while the jury initially found that Mr. Scharf may have trespassed, they found that that contract gave him a right to do the work he was doing, and that was directly at odds with the summary judgment findings. But there's more issues with the summary judgment findings. First is that the lower court had two diametrically opposed findings when they both let the primary breach of contract claim survive and then extinguished the counterclaim, and that's the real issue on attorney's fees. The court found that on the primary claim, some evidence that the drainage work was part of valid reclamation work was shown, and that's how he let the primary claim survive to trial. But on the counterclaim, he found that CST had not pointed the court to sufficient evidence in the record to demonstrate that in 2016 through 18, the contract required that they be permitted to enter onto the farm track to build large trenches. Because those two findings are diametrically opposed, that in and of itself should be considered a manifest error. It also, as an evidentiary prediction of the lower court, was completely superseded by the actual facts found by the jury in that defense to trespass. Again, that the contractual right did in fact exist. They had all of the facts and information in front of them, and instead of making a prediction like the district court needs to do for a summary judgment finding, they had all of the facts before them, and they found that that contractual right existed. While of course that wasn't framed to the jury as undoing the motion for summary judgment, in effect, because they found the actual fact of that contract controlled the work, it means that one of the two findings from the lower court was an error, and the fact that those two findings were diametrically opposed is what creates the manifest error. Again, a manifest error is plain and indisputable error where it disregards credible evidence. It can only be speculated about what the district court did with the evidence, but the fact that it came to two separate conclusions on the different claims only shows that he got it wrong on one or the other. They both can't exist because it controls the same work. Drainage work, reclamation work, and this was all mostly work on the farm track. So this was the western part of the property where a lot of this work took place and was the initial problem when trespass was alleged. So as those two incompatible motion for summary judgment evidentiary predictions were superseded, we have to look to the case law and the underlying principles in the case law. Now, the court rejected on a Rule 59 and Rule 60 motion that its evidentiary predictions should be superseded by the actual facts of the jury. However, what the court didn't do was ever make a finding about whether a manifest error existed. And that is the abuse of discretion that the court had where they made an error because it didn't even look to see if there was a manifest error. And because that manifest error exists, it should have been overturned. Attorneys' fees under the fee-shifting provisions say successful enforcement of the terms and provisions of the contract. Mr. Shark was on the property three separate times trying to finish the work that was issued in this case and he was thrown off. He followed directions and said, if you don't want me on the property, I will leave. He was then sued for breach of contract for not completing the reclamation work. Under the fee-shifting provision, he was trying to do what was required under the contract and because the appellants threw him off the property. Thank you, counsel. Yes, sir. Thank you. Anything further, Mr. Walton? Yes, just on the attorney fee issue. Counsel laid out a reason why he could have and perhaps should have appealed the denial of, or I'm sorry, the grant of summary judgment on the counterclaim. Undisputed fact is he did not. They admit that they did not. It's not part of the appeal. In the absence of a successful counterclaim, fee provisions like the one at issue in this defends a breach of contract case to attorney fees. We've cited the Illinois case law. Thank you, counsel. Thank you. The case is taken under advisement.